UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

N⁰ 08-CV-0628 (JFB) (WDW)
_____

KEVIN GILMORE,

Plaintiff,

VERSUS

LANCER INSURANCE CO.,

Defendant.

_____

**MEMORANDUM AND ORDER**
January 7, 2010
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Kevin Gilmore ("plaintiff" or "Gilmore") brings this suit against Lancer Insurance Company ("defendant" or "Lancer" or "Company"), his former employer. Gilmore claims that Lancer violated Title VII of the 1964 Civil Rights Act and the New York State Human Rights Law by discriminating against him on the basis of gender when it fired him in April 2007.[1]

Lancer argues that it fired Gilmore because he engaged in violent behavior against a co-worker.

Lancer has now moved for summary judgment. For the reasons set forth in the following Memorandum and Order, the Court grants the motion in its entirety on the federal claims. In particular, it is undisputed that (1) a female co-worker reported to her supervisor that, during a social outing after work on April 13, 2007, plaintiff had beaten her, thrown her belongings from his car, left her alone on a Manhattan street, and she had been treated at a hospital for injuries; and (2) plaintiff was

---

[1] Although not specifically alleged in the complaint, plaintiff also appears to be attempting to assert a defamation/libel claim in his opposition papers. (*See* Pl.'s Opp., at 3-4 ("The defendant further caused damage to the plaintiff by announcing to the company that the plaintiff assaulted a co-worker .... There was no reason for the defendant to announce to all employees why the plaintiff was let go, knowing that word would get around the industry and further harm the plaintiff.").)

criminally charged with misdemeanor assault, harassment, and robbery based on the incident. Although plaintiff never provided his version the events to his employer prior to the termination, plaintiff asserted in his deposition that he accidently hit the co-worker in the face as she struggled to take hold of the steering wheel of the car that he was driving. He further testified that, after the car was parked and they argued, he "started punching the seat behind her," there was a "scuffle," he threw open the door, she then "fell out of the car," and he threw her pocketbook out of the car and drove away, leaving her on the street as people from a nearby bus stop came over to assist. Although plaintiff claims in opposition to the summary judgment motion that the defendant's investigation into the altercation was sloppy and that the defendant did not seek to get his version of events from his criminal defense attorney, plaintiff has produced absolutely no evidence that the defendant's decision to terminate him was motivated by his gender. Instead, viewing the evidence in the record in the light most favorable to plaintiff, the only decision that a rational jury could reach in this case was that defendant terminated plaintiff because it believed that he had assaulted a co-worker. Accordingly, his federal discrimination claims cannot survive summary judgment. Given that the federal claims do not survive summary judgment, the Court, in its discretion, declines to exercise supplemental jurisdiction over the state law claims contained in the complaint.

I. BACKGROUND

The following facts are taken from the parties' depositions, declarations, exhibits, and respective Local Rule 56.1 statements of facts.[2] Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 n.1 (2d Cir. 2005). Accordingly, with regard to defendant's motion for summary judgment, the Court shall construe the facts in favor of plaintiff.

A. Factual History

Lancer is a commercial insurance company. (Def.'s 56.1 ¶ 1.) In 2001, Lancer hired plaintiff Gilmore to work in its Plainview, Long Island office as a representative handling insurance claims for rental car companies. (*Id.* ¶ 8.) By 2006, plaintiff had moved to Lancer's "bus/limo unit," which was also located in the Plainview office. (*See id.* ¶ 13.) At all relevant times, plaintiff was an employee-at-will. (*Id.* ¶ 10.)

In March 2007, plaintiff began dating Kimberly Cammarano. (*Id.* ¶ 17.) Cammarano also worked in Lancer's bus/limo unit. (*Id.* ¶ 15.) Cammarano told plaintiff that she did not want their co-workers to know about the relationship and stated that she would end the relationship if anyone found out about it. (*Id.* ¶ 18.)

On Friday, April 13, 2007, plaintiff, Cammarano, and several co-workers decided to take the afternoon off from work in order to have an outing in Manhattan. (*See id.* ¶¶ 20, 22, 23.) Plaintiff and Cammarano traveled in plaintiff's car from their homes on Long Island to Manhattan. (*Id.* ¶ 24.) Although off from work, plaintiff was scheduled to be on call during the upcoming weekend and had the

---

[2] Where one party's Local Rule 56.1 statement is cited, the fact is not contested by the other party.

2

Company's on-call Blackberry. (*Id.* ¶ 20.) During the course of the outing, Cammarano became upset with plaintiff because she believed he had told their co-workers about their relationship. (*Id.* ¶ 25.) Although this initial dispute eventually subsided, plaintiff and Cammarano later had a verbal altercation while traveling in a taxi cab from a bar back to the garage where plaintiff's car was parked. (*Id.* ¶ 29.)

After arriving at the garage, plaintiff and Cammarano got in plaintiff's car and began their return to Long Island. (*See id.* ¶ 30.) As plaintiff was driving down Second Avenue with Cammarano in the passenger seat, tensions between the two again flared up. At some point, plaintiff's right hand struck Cammarano's face, although the parties dispute whether this occurred intentionally or by accident. (*Compare id.* ¶ 31 *with* Pl.'s 56.1 ¶ 31.) What plaintiff does not dispute is that he stopped the car, told Cammarano to get out, "scuffle[d]" with Cammarano, and repeatedly punched the back of Cammarano's seat before Cammarano "went limp" and "fell out" or "kind of crawled out of the car." (*See* Def.'s 56.1 ¶ 33; Pl.'s Dep. 101:12-102:2.) He then threw Cammarano's pocketbook from the car before driving off, leaving Cammarano on the street. (*See* Def.'s 56.1 ¶ 33; Pl.'s Dep. 101:12-102:2.).

Sometime during the next two days, either Saturday, April 14 or Sunday, April 15, plaintiff contacted Kieran McGowan, a Lancer Vice President, and told him "something happened[,] and I'm going to need to take a couple of days off." (Def.'s 56.1 ¶ 37.) McGowan asked if he could be of assistance; plaintiff said he could not discuss the issue but wanted the Company to keep an open mind. (*Id.*) McGowan later called plaintiff back and asked him if the situation involved anyone in the office. Plaintiff replied that it did but that he could not discuss it any further. (*Id.* ¶ 38.)

On Monday, April 16, McGowan met with plaintiff in the parking lot of a Holiday Inn near Lancer's Plainview office so that plaintiff could return the on-call Blackberry. (*Id.* ¶¶ 40-41.) At this meeting, plaintiff again told McGowan that he could not talk about the incident and that he had retained a criminal defense attorney. (*Id.*) Also on that same day, Cammarano contacted her supervisor, Robin Fetter, and told her that she was not coming into work that day. Cammarano stated that plaintiff had beaten her on Friday evening, thrown her belongings from his car, and left her alone on a Manhattan street. (*Id.* ¶ 42.) Cammarano further told Fetter that she had been treated at a hospital for her injuries. (*Id.*) In a follow-up conversation with Fetter, Cammarano asserted that she intended to pursue criminal assault and robbery charges against plaintiff. (*Id.* ¶ 46.) McGowan also spoke with Cammarano that same day. (*Id.* ¶ 48.) She told McGowan that she was afraid to return to work because of plaintiff and that she was obtaining an order of protection against him. (*Id.*) McGowan later contacted Gail Reilly, a Senior Vice President in Lancer's Human Resources Department, to inform her of the incident, and Reilly, in turn, contacted Lancer's attorney, John Petrelli. (*Id.* ¶¶ 49-50.)

The next day, Tuesday, April 17, plaintiff turned himself in to the police. (*Id.* ¶ 48.) He was arraigned the following day on charges of misdemeanor assault, harassment, and robbery. (*Id.* ¶¶ 48, 51; *see also* Pl.'s Dep. 115:24-116:6.) Before releasing plaintiff on his own recognizance, the court issued an order of protection restricting plaintiff's

3

contact with Cammarano but allowing him to return to work, even though he and Cammarano worked in the same department. (Def.'s 56.1 ¶ 52.) Also on Wednesday, April 18, McGowan received a call from plaintiff's criminal defense attorney and had a separate conversation with Cammarano. Plaintiff's criminal defense attorney expressed her concerns about the plaintiff and Cammarano working together, even though the order of protection allowed plaintiff to return to work. (Def.'s ¶¶ 56.1 56-57; Pl.'s 56.1 ¶ 57; Richman Affirm. ¶ 3 ("My concerns were that the purported complainant might try to abuse the order of protection . . . .").) The attorney also stated that, in light of the pending charges, she could not provide McGowan with plaintiff's version of events. (Def.'s 56.1 ¶ 58; Pl.'s 56.1 ¶ 58.)³ Cammarano told McGowan that she was scared of plaintiff and that Lancer would be receiving Cammarano's hospital records. (Def.'s 56.1 ¶¶ 54-55.) Following his conversations with plaintiff's attorney and Cammarano, McGowan again discussed the situation with Reilly. (*See id.* ¶ 61.)⁴

On Thursday, April 19, plaintiff again met with McGowan in the Holiday Inn parking lot. (*Id.* ¶¶ 62-63.) Plaintiff provided McGowan with copies of the protective order. (*Id.* ¶ 63.) McGowan again told plaintiff that Lancer wanted to get his side of the story, but plaintiff replied that, in light of the pending criminal charges, he could not discuss the issue. (*Id.* ¶ 64.) The same day, Cammarano returned to

---

³ In his Rule 56.1 statement, plaintiff disputes defendant's assertion that his criminal defense attorney refused to give McGowan plaintiff's version of events. (*Compare* Pl.'s 56.1 ¶ 58 *with* Def.'s 56.1 ¶ 58.) He argues that the McGowan Affidavit cited in defendant's Rule 56.1 statement does not assert this. (*See* Pl.'s 56.1 ("Disputed. See McGowan Aff. 17-18, does not say plaintiff's attorney could not provide a version of events.") However, paragraph 18 of the McGowan Affidavit in fact clearly states that plaintiff's attorney "stated that she could not get into any more details regarding the incident as the criminal charges were still pending against Plaintiff." (McGowan Aff. ¶ 18.) Moreover, the affirmation from plaintiff's criminal defense attorney does not create a disputed factual issue on this point because there is no assertion that counsel wished to offer plaintiff's version of events during her conversation with McGowan. Instead, counsel simply states the following: "I spoke to a gentleman, my notes indicate a Mr. McGowan shortly after Mr. Gilmore's arrest with regard to concerns involving the order of protection. My concerns were that the purported complainant might try to abuse the order of protection and use it as a sword and not a shield. I had made my concerns clear to Lancer via Mr. McGowan. It was clear in my discussions that the allegations had arisen out of an interaction between the complainant and Mr. Gilmore during a non work related outing as they had a social relationship which was not work related." (Richman Affirm. ¶¶ 2-4.) In any event, this dispute is not material for purposes of the summary judgment motion.

⁴ Defendant also alleges that, on this same day, plaintiff's criminal defense attorney had a separate conversation with Reilly, the Lancer Human Resources Senior Vice President, but plaintiff disputes this. (*Compare* Pl.'s 56.1 ¶ 60 *with* Def.'s 56.1 ¶ 60.) The affirmation from plaintiff's criminal defense attorney does not directly dispute this, but rather simply states, "I do not have notes with regard to any other contact from Lancer with regard to Mr. Gilmore. I do not have any indication or recollection of being contacted by Lancer to further investigate this matter." (Richman Affirm. ¶¶ 5-6.) In any event, this purported factual dispute raised by plaintiff is immaterial for purposes of the summary judgment motion.

4

work. (*Id.* ¶ 66.) She told Fetter, her supervisor, that she was concerned about plaintiff coming back to the office. (*Id.*) Fetter and McGowan both observed that plaintiff had bruises on her face. (*Id.* ¶¶ 66-67.)

McGowan provided Reilly with copies of the order of protection and advised her that he was unable to get additional information from plaintiff. (*Id.* ¶ 67.) After her meeting with McGowan, Reilly met with Lancer's lawyer and subsequently decided that plaintiff should be fired. (*Id.* ¶ 68.) On Friday, April 20, Reilly called plaintiff and told him he was being terminated for violent behavior towards a co-worker. (*Id.* ¶ 70.)

B. Procedural History

Plaintiff, who is proceeding *pro se*, filed a complaint with the Equal Employment Opportunity Commission on May 14, 2007 and received a right to sue letter on November 30, 2007. He filed a complaint in this case on February 14, 2008. The complaint asserts claims under (i) Title VII for disparate treatment; (ii) Title VII for wrongful termination; (iii) New York Executive Law § 296 for disparate treatment; and (iv) New York Executive Law § 296 for wrongful termination.[5] Plaintiff alleges that defendant discriminated against him on the basis of gender because it credited Cammarano's version of the April 13 incident over his and failed to investigate the incident adequately before firing him.

Defendant answered the complaint on March 6, 2008 and filed an amended answer on March 18, 2008. The parties completed discovery on February 27, 2009. Defendants filed the instant motion for summary judgment on April 17, 2009 and provided the *pro se* plaintiff with the notice required by Local Rule 56.2 the same day. Plaintiff filed an opposition on or about May 22, 2009. Defendants filed their reply on July 6, 2009. The matter is fully submitted.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v.*

---

[5] The disparate treatment that plaintiff complains of is his allegedly wrongful termination. (*Compare* Compl. ¶ 38 *with* Compl. ¶ 52 (federal claims); Compl. ¶¶ 57-58 *with* Compl. ¶¶ 65-66 (state law claims).) Therefore, the wrongful termination claim and the disparate treatment claim both arise from the same adverse action—namely, his termination—and are both based on plaintiff's assertion that the termination was based on gender discrimination and/or disparate treatment based on gender.

5

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g.*, *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

Finally, where the plaintiff is proceeding *pro se*, the Court must "construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002) (alterations in original) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)). Though a *pro se*

litigant's pleadings and other submissions are afforded wide latitude, a *pro se* party's conclusory assertions, completely unsupported by evidence, are not sufficient to defeat a motion for summary judgment. *Shah v. Kuwait Airways Corp.*, - - - F. Supp. 2d - - -, No. 08 Civ. 7371 (GEL), 2009 WL 2877604, at *2 (S.D.N.Y. Sept. 9, 2009) ("Even a *pro se* party, however, 'may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful.'" (quoting *Auguste v. N.Y. Presbyterian Med. Ctr.*, 593 F. Supp. 2d 659, 663 (S.D.N.Y. 2009))).

III. DISCUSSION

A. Title VII Claims Based on Termination

Plaintiff's Title VII discrimination claims assert disparate treatment and wrongful termination based upon his gender. In particular, plaintiff contends that defendant's decision to terminate him following an off-the-job altercation with a co-worker was a pretext for gender discrimination, including disparate treatment relating to gender. As set forth below, these Title VII claims cannot survive summary judgment because there is no evidence of disparate treatment based on gender, or any kind of gender discrimination, in connection with the termination decision. Instead, the uncontroverted facts in the record demonstrate that the decision was based on the defendant's belief that plaintiff had assaulted a co-worker.

1. Applicable Law

Because plaintiff presents no direct evidence of discriminatory treatment based on his gender, the Court reviews his claim under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show "'(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.'" *Sassaman v. Gamanche*, 566 F.3d 307, 312 (2d Cir. 2009) (quoting *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008)). The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "de minimis." *See Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

Once plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "'articulate some legitimate, nondiscriminatory reason for the' termination." *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996)). If the defendant carries that burden, "the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Patterson*, 375 F.3d at 221 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* (quoting *Burdine*, 450 U.S. at 253).

7

To meet this burden, the plaintiff may rely on evidence presented to establish her *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that she satisfies "*McDonnell Douglas*'s minimal requirements of a prima facie case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James v. N.Y. Racing Ass'n*, 233 F.3d 149, 153 (2d Cir. 2000). Instead, the key inquiry is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.* at 153-54; *Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 207-08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove–particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

In this case, defendant argues that plaintiff cannot establish the second and fourth elements of the *prima facie* case. However, for the purposes of this motion, the Court assumes that plaintiff has satisfied the minimal burden required by *McDonnell Douglas* to make out a *prima facie* case. Here, the defendant has offered a legitimate, non-discriminatory reason for plaintiff's discharge—namely, defendant's belief that plaintiff had exhibited violent behavior towards Cammarano, a co-worker. (*See* Reilly Aff. ¶¶ 27-28.) Hence, the Court proceeds directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find gender discrimination by examining each party's evidence individually and then proceeding to evaluate the evidence as a whole. *See Tomney v. Int'l Ctr. for the Disabled*, 357 F. Supp. 2d 721, 742 (S.D.N.Y. 2005); *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305, 314 (2d Cir. 1997); *see also Siano v. Haber*, 40 F. Supp. 2d 516, 519-20 (S.D.N.Y.), *aff'd mem.*, 201 F.3d 432 (2d Cir. 1999); *Lapsley*, 999 F. Supp. at 515.

2. Application

As set forth below, plaintiff has proffered no evidence from which a reasonable jury could conclude that discriminatory animus based on gender motivated defendant to fire him.

In arguing that it fired plaintiff because it believed he engaged in violent behavior toward a co-worker, defendant primarily relies on what it learned in the days following the incident. On the Monday after the incident, Cammarano told her supervisor that plaintiff had beaten her, thrown her belongings out of his car, and driven off and that she was pressing charges against plaintiff. Later that same day, defendant learned that Cammarano was obtaining an order of protection against plaintiff. Cammarano also repeatedly told Lancer that she was afraid of plaintiff and

8

concerned about his potential return to work. When Cammarano returned to work on Thursday, April 19, six days after the incident, Lancer employees observed bruises on her face. Plaintiff does not dispute that on several occasions he declined to comment after McGowan, a Lancer Vice President, asked him for details of what happened.[6] (*See* Pl.'s 56.1 ¶¶ 37, 38, 41, 64.) In sum, defendant argues that it concluded, based on the available information, that plaintiff assaulted Cammarano and that it was in the best interests of security at the Company to dismiss plaintiff. (*See* Reilly Aff. ¶ 27.)

In response, plaintiff argues that the defendant intentionally failed to get his side of the story and instead relied only on Cammarano's allegations. (*See* Pl.'s Opp. at 3.) Although conceding that he declined to discuss his version of the events, he faults the defendant for failing to get those details through his attorney. (*See* Pl.'s Opp. at 1 ("The defendant knew there were criminal charges against the plaintiff and he had retained counsel. The plaintiff could not give his version of events without his attorney.").) Specifically, he disputes defendant's assertion that his attorney spoke with Gail Reilly, a Senior Vice President in Lancer's Human Resources Department and the person who ultimately decided to terminate plaintiff. (*See* Reilly Aff. ¶ 26.) He also implies that Cammarano's allegations were not credible. He argues, for example, that Cammrano's injuries—which he classifies as "bumps and bruise[s]"—are inconsistent with Cammarano's claim that she was intentionally hit in the face with a closed fist. (*See* Pl.'s Opp. at 2-3.) He further notes that the order of protection allowed plaintiff to return to work, even though Cammarano would be present.

None of these arguments, or purported factual disputes regarding conversations between his criminal defense attorney and the Company, can overcome the undisputed evidence regarding defendant's legitimate, non-discriminatory reason for terminating plaintiff.[7] The question in this Title VII case

---

[6] For example, plaintiff testified at his deposition that, when he called McGowan over the weekend of April 14-15 to tell him that he needed a few days off, McGowan asked him what happened, and plaintiff replied, "I can't talk about it right now." (Pl.'s Dep. 111:16-18.) Similarly, plaintiff testified at his deposition that, in his meeting with McGowan on April 16, 2007, he again stated that he could not discuss the details of the incident: "I think he [McGowan] asked me what happened. I told him I can't talk about it." (Pl.'s Dep. 114:20-115:8.) Finally, plaintiff testified that, during his subsequent meeting with McGowan to give McGowan a copy of the order of protection, he was still not in a position to discuss the matter because of the pending criminal case. (*See* Pl.'s Dep. 121:2-7 ("Q. Did he [McGowan] ask for your side of the story? A. He couldn't. Q. Why couldn't he? A. Because I had an attorney for the criminal charges that were pressed against me.").)

[7] Plaintiff also attempts to undercut the non-discriminatory reason for his termination by arguing that the incident did not occur at the workplace and, thus, could not provide a basis for termination. (*See* Pl.'s Opp., at 1 ("The fact that the allegations happened outside the workplace is proof that it was not a violation of the companies [sic] employee handbook which states the code of conduct for employee at the workplace.").) That argument is frivolous. As a threshold matter, the Code of Conduct in the Employee Handbook is not limited to on-the-job conduct and, as an example of unethical behavior, references "[c]onfrontation with customers or co-workers." (Reilly Aff., Ex. C, at 18.) In any event, there is nothing that prohibited the defendant from

9

is not whether defendant's decision to fire plaintiff was correct but whether it was discriminatory. *See, e.g.*, *McPherson v. N.Y. City Dept. of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what '*motivated* the employer . . . .'" (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983))) (emphasis in original); *Koleskinow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 111 (S.D.N.Y. 2009) ("Where a plaintiff has been terminated for misconduct, the question is not 'whether the employer reached a correct conclusion in attributing fault [to the plaintiff] . . . , but whether the employer made a good-faith business determination.'" (quoting *Baur v. Rosenberg, Minc, Falkoff & Wolff*, No. 07-Civ.-8835(GEL), 2008 WL 5110976, at *5 (S.D.N.Y. Dec. 2, 2008))); *Agugliaro v. Brooks Bros.*, 927 F. Supp. 741, 747 (S.D.N.Y. 1996) ("Even assuming defendants were wrong in their belief that plaintiff had engaged in sexual misconduct, what is significant is that they based their decision to dismiss plaintiff on that belief, and not on his age, gender, or pension status."). As such, plaintiff's criticisms of the way in which Lancer conducted its investigation do not, standing alone, create an issue of material fact. *See, e.g.*, *McLee*, 109 F.3d at 135 (finding summary judgment appropriate on Section 1981 and Title VII discriminatory discharge claims where plaintiff's "disputations [of his employer's proffered explanations] were rationalizations for his deficiencies rather than demonstrations of any genuine issue of material fact to be tried"); *Rorie v. United Parcel Serv., Inc.*, 151 F.3d 757, 761 (8th Cir. 1998) (stating that "the relevant inquiry was whether [plaintiff] created a genuine issue of material fact as to whether her discharge was gender-based and not whether her termination was reasonable" and noting that "[i]t is not the task of this court to determine whether [the investigator's] investigation was sufficiently thorough or fair"); *Brown v. Soc'y for Seaman's Children*, 194 F. Supp. 2d 182, 191 (E.D.N.Y. 2002) ("[A]lthough plaintiff felt she had been treated unfairly, . . . [t]here simply is no basis in the record from which a rational juror could find that the reasons given for plaintiff's termination . . . were false or a pretext for discrimination."); *Ricks v. Conde Nast Publ'ns., Inc.*, 92 F. Supp. 2d 338, 347 (S.D.N.Y. 2000) ("The mere fact that an employee disagrees with her employer's assessments of her work . . . cannot[,] standing on its own[,] show that her employer's asserted reason[s] for termination [were] pretextual.") (citation omitted). Instead, plaintiff must bring forward evidence from which a jury could infer that discriminatory animus motivated defendant's decisions. *See*

---

terminating an employee, such as plaintiff, based upon what it believed was a criminal assault on a co-worker, even if the actions occurred outside the workplace. If an employer believes that an employee assaulted a co-worker, the employer need not overlook such violence simply because it occurred outside the workplace. *See, e.g.*, *Nawrot v. CPC Int'l*, 277 F.3d 896, 907 (7th Cir. 2002) ("[Plaintiff] says that his harassment [of co-worker that, in part, led to his termination] did not occur at work. But why should that matter? It is up to [the defendant employer] to decide whether harassment of co-workers anywhere is conduct it is willing to accept from its employees. We need not be human resource specialists to know that problems outside of work easily spill over into and affect employees at work, as it did in this case."); *Morgan v. Mass. Gen. Hosp.*, 901 F.2d 186, 190 (1st Cir. 1990) (rejecting argument that employer could not base its termination decision on plaintiff's assault on co-worker because assault occurred off company property).

10

*Sassman*, 566 F.3d at 315 (holding that "where a plaintiff can point to evidence closely tied to the adverse employment action that could reasonably be interpreted as indicating that discrimination drove the decision, an arguably insufficient investigation may support an inference of discriminatory intent").

Plaintiff has not brought forward any evidence to suggest that discriminatory animus motivated the defendant's decision in connection with his termination, including any alleged failure by defendant to get plaintiff's version of events. As a preliminary matter, the Court notes that the only difference between plaintiff's version of events and Cammarano's appears to be that plaintiff claims he did not intentionally hit Cammarano in the face. Plaintiff does not dispute that he engaged in a "scuffle" with Cammarano after he pulled the car over and that he left an incapacitated Cammarano by the side of the road. As he testified during his deposition:

> Then I pulled over, I threw the car into park, I unbuckled my seat belt and I told her you're getting the fuck out of the car, and she's like don't you threaten me. I started punching the seat behind her and at the same time she's hitting me, there's a scuffle, and I threw open the door and she just went limp, and I was trying to undo her seat belt. And then some other people from the bus stop, I guess . . . it was a bus stop, so people came over and she fell out of the car, I was able to get her seat undone and she kind of crawled out of the car. And I was cursing at her, and I saw her pocketbook, I took it, I threw it out the door and I left.

(Pl.'s Dep. 101:12-102:2.)

In any event, the undisputed facts show that Lancer Vice President McGowan repeatedly attempted to get plaintiff's side of the story and was told by plaintiff that he could not discuss the matter. Although McGowan was not involved in deciding to terminate plaintiff, it is undisputed that he repeatedly discussed the situation with Reilly, who did decide that plaintiff should be fired. Additionally, defendant heard Cammarano's side of the story, it saw Cammarano's injuries, and it learned that plaintiff had been criminally charged and had an order of protection entered against him.[8] In sum, plaintiff has proffered no evidence from which a reasonable jury could find that it was gender bias—and not the results of a good-faith investigation—that motivated defendant to fire plaintiff. *Cf. Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2001) (affirming summary judgment in Title VII gender discrimination case because, *inter alia*, plaintiff "presented no evidence that [defendant] did not honestly believe its proffered reasons"); *Euerle-Wehle v. United Parcel Serv.*, 181 F.3d 898, 900 (8th Cir. 1999) (affirming district court's grant of summary judgment in Title VII case where credibility determinations made by employer during investigation that led to plaintiff's

---

[8] Although the order of protection was, by its terms, inapplicable at the workplace, even plaintiff's criminal attorney believed it could still create issues in the workplace. In an affirmation attached to plaintiff's opposition, plaintiff's criminal attorney stated that she contacted McGowan because she had "concerns that [Cammarano] might try to abuse the order of protection and use it as a sword and not a shield." (See Richman Affirm. ¶ 3.)

termination were made "reasonably and in good faith").

Other courts have reached a similar conclusion under analogous circumstances. For example, in *Morgan v. Massachusetts General Hospital*, 901 F.2d 186, 189-91 (1st Cir. 1990), the First Circuit granted summary judgment in the defendant hospital's favor on a race discrimination claim brought by an employee who claimed that the assaultive conduct cited by the employer as the basis for the discharge was a mere pretext. In particular, the First Circuit rejected the argument that the plaintiff's disagreement with the employer's decision regarding who instigated the fight between plaintiff and a co-worker did not provide a basis for plaintiff to overcome summary judgment given the absence of any evidence of discriminatory motivation:

> The evidence presented to the district court demonstrated that the Hospital had determined that [plaintiff], rather than the co-worker, instigated the altercation. Consequently, evidence that the co-worker was not discharged is insufficient to sustain appellant's burden with regard to pretextuality. Nor is it enough for appellant to present evidence suggesting that the employer wrongly concluded that appellant struck the co-worker without provocation or justification. As the district court so dexterously explained, "evidence contesting the factual underpinnings of the reasons for the [employment decision] proffered by the employer is insufficient without more, to present a jury question."
>
> Moreover, the appellant cannot prove pretext solely by contesting the objective veracity of appellee's action. Consequently, as the district court concluded, "[e]ven if [plaintiff] were able to demonstrate that the Hospital mistakenly believed he was the aggressor and that, in discharging [plaintiff], the Hospital acted on matters of purely private concern, these facts would not tend to show that *race* was a motivating factor in [plaintiff's] discharge.

*Id*. at 191 (citations omitted). Thus, the First Circuit determined that summary judgment was warranted because plaintiff "offered no evidence which tended to show that his discharge was based on racially discriminatory reasons rather than on his role as a protagonist in the altercation with the co-worker." *Id*.; *see also Jones v. Union Pac. R.R.*, 302 F.3d 735, 744 (7th Cir. 2002) (affirming summary judgment in employer's favor on discrimination claim arising from dismissal of plaintiff following a quarrel with another employee and noting the following: "[Plaintiff] asserts that he was not insubordinate or quarrelsome with the [other employee] . . . . While we do accept his version of the facts as true, the actual issue is not whether [the defendant's] account of events is correct, rather it is whether [the defendant] honestly believed the report of its officers."); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 568 (2d Cir. 2000) (granting summary judgment on discrimination claim arising from altercation with co-worker and noting "even if [plaintiff] herself believed that she was acting in self-defense, she has produced no evidence showing that [defendant] believed that to be the case"); *Maturine v. Am. Int'l Group, Inc.*, No. 04 CV

12

9064 (GBD), 2006 WL 3206098, at *6 (S.D.N.Y. Nov. 6, 2006) (granting summary judgment to employer on discrimination claim alleging race discrimination in termination of plaintiff after altercation with co-worker and noting the following: "Although plaintiff believes that AIG's determination that plaintiff was the initial aggressor was erroneous, that does not suggest that AIG's proffered reason is a pretext for discrimination. An employer's decision to fire an employee may be unwise, unreasonable, or wrong, but that is not a valid basis from which to conclude that the proffered reason is pretextual."); *Sears v. PHP of Ala.*, No. 2:05CV304-ID, 2006 WL 932044, at *17 (M.D. Ala. Apr. 10, 2006) ("[Defendant's] belief that [plaintiff] started the fight [with another employee] and is the one at fault for the events occurring on May 10, even if that belief is erroneous, reflects a legitimate, non-discriminatory explanation for the decision to fire her."); *Flenaugh v. Airborne Express, Inc.*, No. 03 C 3687, 2004 WL 407009, at *9 (N.D. Ill. Mar. 1, 2004) ("[Plaintiff] attacks the honesty of [the manager's] belief by contesting specific investigatory conclusions, *i.e.*, that [plaintiff] assaulted [two employees]. He asserts that [the manager's] findings are undermined by [another employee's] deposition testimony. However, these purported contradictions are insufficient to show pretext."); *Kirk v. Consol. Freightways Corp. of Del.*, No. 3:96-CV-1024G, 1997 WL 289056, at *4 (N.D. Tex. May 21, 1997) (granting summary judgment in employer's favor on discrimination claim based upon plaintiff's physical altercation with a co-worker, despite the fact that plaintiff disputed the employer's version of the altercation, where the record demonstrated "that a fight had been reported, that [the co-worker's] face and [plaintiff's] knuckles were bloody, and that [plaintiff] refused to provide a statement as to his version of events [at the time of the incident]").

Nor can plaintiff point to any other evidence from which a reasonable jury could infer discrimination. Although it is well settled that a plaintiff can raise an inference of discrimination by showing disparate treatment, see *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977); *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003); *Norville v. Staten Island University Hospital*, 196 F.3d 89, 95 (2d Cir. 1999), plaintiff provides no such evidence. For example, plaintiff cites no evidence that a similarly-situated female employee would have been treated differently. To be "similarly situated" with another person for Title VII purposes, plaintiff must establish that he and the other employee "were subject to the same workplace standards and . . . the conduct for which the employer imposed discipline was of comparable seriousness." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). In his deposition, plaintiff admitted that he was unaware of any female employee who was accused of assaulting a co-worker but was not terminated. (Pl.'s Dep. 136:4-7.) Nor is Cammarano herself similarly situated to plaintiff. Although plaintiff claims that Cammarano hit him, he does not allege that Cammarano inflicted injuries on him, forced him from a car, threw his personal belongings out on the street, or left him by the side of the road. *Cf. Shumway v. United Parcel Serv.*, 118 F.3d 60, 64 (2d Cir. 1997) ("To demonstrate that similarly situated males were treated differently, [plaintiff] has to show that these males engaged in comparable conduct. In [plaintiff's] case, her misconduct included a long term relationship, harassing behavior, and lying."). *See generally Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co.*, 152 F.3d

17, 26 (1st Cir. 1998) (concluding that employees who fought each other were not similarly situated given circumstances of fight and prior instances of misconduct). In any event, unlike Cammarano, plaintiff declined to provide his version of the events to the defendant prior to the termination.

Finally, in his opposition, plaintiff cites to no comments by any decision-makers that would provide a basis to infer discriminatory intent. The Court has independently reviewed plaintiff's deposition and notes that plaintiff claimed that women at Lancer made what he characterized as negative remarks about his gender. These comments, however, do not give rise to an inference of discrimination. The Second Circuit has stated that whether a remark is probative of discrimination depends on whether the remark "evinces a discriminatory state of mind" and on the temporal proximity between the remark and the alleged discriminatory behavior. *Tomassi v. Insignia Fin. Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007). In this case, plaintiff testified that women at Lancer said that he was "well built and things like that." (Pl.'s Dep. 137:6-7.) Such ambiguous and vague comments clearly do not "evince[ ] a discriminatory state of mind." *See Witkowich v Gonzales*, 541 F. Supp. 2d 572, 585 (S.D.N.Y. 2008) (stating that decision-maker's comment that promotional process was a "beauty contest" was "simply too vague, and too susceptible to any number of benign meanings, to constitute evidence of age discrimination"). Additionally, plaintiff testified that, in approximately 2006, he was told by an unnamed supervisor, that "men here don't get promoted."[9] However, this comment does not give rise to an inference of discrimination because it was made a year prior to plaintiff's termination, and, moreover, there is no evidence that the supervisor played any role in defendant's decision to fire plaintiff. *See, e.g.*, *Kolesnikow*, 622 F. Supp. 2d at 115 (concluding that alleged discriminatory comments did not give rise to an inference of discrimination because, *inter alia*, "there is no evidence they were made close in time to [plaintiff's] termination or were made or condoned by [any employee] involved in the decision to terminate [plaintiff's] employment"); *cf. Aulicino v. N.Y. City Dept. of Homeless Servs.*, 580 F.3d 73, 81-82 (2d Cir. 2009) (concluding, in a Title VII failure to promote case, that a reasonable jury could infer racial hostility motivated failure to promote based on derogatory comments by supervisor in charge of making promotion decision); *Sassman*, 566 F.3d at 314 (stating that a jury could construe discriminatory intent where supervisor made comment during phone call in which he also pressured plaintiff to resign his position). In other words, because these alleged comments were "unrelated to the decisional process itself," it is not sufficient evidence to establish a claim of discrimination. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring in the judgment); *see also Campbell v. Alliance Nat'l Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) (finding isolated, stray remark insufficient to establish animus).

In sum, viewing the evidence as a whole in

---

[9] (*See* Pl.'s Dep. 137:9-137:15 ("A. And I was told by a manager there who was a woman that men here don't get promoted that I should never expect to — Q. Who told you that? A. The person who, I can't remember her name. She was a supervisor for the teacher's insurance. Oh, Judy something.").)

the light most favorable to plaintiff, no reasonable jury could find that plaintiff was terminated because of his gender. Although plaintiff has offered several arguments to defeat summary judgment, plaintiff relies on pure speculation and has not produced sufficient evidence to support a rational finding that (1) the legitimate, non-discriminatory reason proffered by defendant was false, and (2) that more likely than not, plaintiff's gender was the real reason for the termination. Instead, based on the testimony and documentary evidence submitted, the only rational conclusion is that plaintiff was terminated as a result of the defendant's belief that he had assaulted a co-worker. As the Second Circuit has stated, "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). Here, plaintiff failed to raise a genuine question of fact on his gender discrimination/disparate treatment claims, and the Court grants defendant's motion for summary judgment.

B. Hostile Work Environment

In the context of asserting his disparate treatment/discrimination claim regarding his termination, plaintiff asserts that "[b]ut for the plaintiff's gender, the plaintiff would not have been subjected to a hostile work environment." (Compl. ¶¶ 46, 62.) However, even liberally construing plaintiff's *pro se* complaint to assert a separate hostile work environment claim, no reasonable jury could find that plaintiff was subject to a hostile work environment.

In order to prevail on a hostile work environment claim, a plaintiff must demonstrate that: "'(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003) (quoting *Richardson v. N.Y. State Dept. of Corr. Servs.*, 180 F.3d 426, 436 (2d Cir. 1999)); *accord Terry v. Ashcroft*, 336 F.3d 128, 147-48 (2d Cir. 2003); *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000). In this case, plaintiff makes no allegations of severe or pervasive discriminatory intimidation. The above-referenced isolated incidents, even viewing the evidence in the light most favorable to plaintiff, are not sufficiently severe or "'sufficiently continuous and concerted in order to be deemed pervasive,'" and, therefore, plaintiff's hostile work environment claim fails to survive summary judgment. *See Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (quoting *Carrero v. N.Y. City Hous. Auth.*, 890 F.2d 569, 577 (2d Cir. 1989)); *see, e.g.*, *Petrosino v. Bell Atlantic*, 385 F.3d 210, 223 (2d Cir. 2004) (noting that "isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment") (citations omitted); *Alfano v. Costello*, 294 F.3d 365, 380 (2d Cir. 2002) (finding the alleged conduct non-actionable when the incidents were "too few, too separate in time, and too mild . . . to create an abusive working environment"); *Trinidad v. N.Y. City Dep't of Corr.*, 423 F. Supp. 2d 151, 167-68 (S.D.N.Y. 2006) (finding isolated incidents of defendant calling plaintiff a bitch and making sexual remarks over the course of her five and one-half years of employment insufficient to support a claim of discriminatory harassment); *Augustin v. Yale Club of N.Y. City*, No. 03

15

Civ. 1924 (KMK), 2006 WL 2690289, at *22 (S.D.N.Y. Sept. 15, 2006) (finding "four or five" comments over a five-year period insufficient to support a hostile work environment claim); *Mark v. Brookdale Univ. Hosp.*, No. 04 Civ. 2497 (JBW), 2005 WL 1521185, at *27 (E.D.N.Y. June 22, 2005) (finding two "alleged isolated remarks" by plaintiff's supervisor insufficiently "frequent and pervasive"); *Pagan v. N.Y. State Div. of Parole*, No. 98 Civ. 5840 (FM), 2003 WL 22723013, at *6 (S.D.N.Y. Nov. 18, 2003) (finding that a series of racially derogatory remarks by supervisor directly to plaintiff did "not amount to the sort of 'extremely serious' behavior required to give rise to a hostile work environment under Title VII") (citations omitted); *Hawana v. City of New York*, 230 F. Supp. 2d 518, 533 (S.D.N.Y. 2002) (finding single remark by supervisor insufficient); *Upshur v. Dam*, No. 00 Civ. 2061 (DC), 2003 WL 135819, at *7-*8 (S.D.N.Y. Jan. 17, 2003) (finding "patronizing and racist comments" by supervisor over the course of a single week insufficient).

Accordingly, even if plaintiff were attempting to assert a separate cause of action based upon a hostile work environment, that claim could also not survive summary judgment.

### C. New York State Claims

Plaintiff's complaint also asserts causes of action under New York State Human Rights Law. In addition, although not specifically alleged in the complaint, plaintiff also may be (based upon his opposition papers) attempting to assert a defamation/libel claim in connection with the Company's announcement of his termination.

Having determined that the federal claims do not survive summary judgment, the Court concludes that retaining jurisdiction over any state law claims is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)).

Therefore, in the instant case, the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiff's state law claims because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99 Civ. 3608 (WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claims given the absence of any federal claims that survive summary judgment and dismisses such state claims without prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Court grants defendant's motion for summary judgment in its entirety on the federal claims. The Court declines to retain jurisdiction over plaintiff's remaining state law claims and dismisses such claims without prejudice. The Clerk of the Court shall close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 7, 2010
Central Islip, New York

\* \* \*

Plaintiff is *pro se*. Attorneys for the defendant are Diane Krebs and Brooke Schneider of Gordon & Rees, LLP, 90 Broad Street, New York, NY 10004.